Dear Mr. Kearns:
Reference is made to your recent request for an opinion of this office regarding a proposed sale of Slidell Memorial Hospital ("SMH") by St. Tammany Parish Hospital Service District No. 2 (the "District") to Tenet Healthcare ("Tenet"), in consideration of $130,000,000 payable in cash at closing. With respect thereto, you have requested that we address the following issues.
1. Can Slidell Memorial Hospital be sold to a for-profit entity?
2. Can Slidell Memorial Hospital be sold to Tenet Healthcare?
 3. Is the Board of Commissioners of St. Tammany Parish Hospital Service District No. 2 the proper authority to negotiate and execute a sale of the hospital facility?
 4. Must the proposed sale be approved by the electorate of the service district by means of a referendum?
 5. Does the Hospital Service District continue its existence after a sale of the Hospital facility?
6. Do the sale proceeds belong to the Hospital Service District?
You have also provided this office with an opinion that addresses the above listed questions, which opinion was signed by the Honorable Walter P. Reed on December 19, 2002.
Please be advised that we have reviewed Mr. Reed's opinion regarding this matter, and we concur in the conclusions reached therein. A copy of that opinion is attached hereto and made a part hereof. It is the opinion of this office that Slidell Memorial Hospital can be sold to Tenet Healthcare, and that the Board of Commissioners of St. Tammany Parish Hospital Service District is the proper authority to negotiate and execute the sale. It is our opinion that the sale must be approved by the electorate of the District by public referendum in accordance with LSA-R.S. 33:4341. Additionally, it is our opinion that the District shall remain in existence after the sale of the Hospital, and that the sale proceeds shall belong to the District.
We trust the foregoing to be responsive to your request. Please do not hesitate to contact us if we can be of further assistance.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
Date Released: December 24, 2002
December 19, 2002
Board of Commissioners Slidell Memorial Hospital 1001 Gause Boulevard Slidell, Louisiana 70458
Re: Proposed sale to Tenet Healthcare
Ladies and Gentlemen:
As you know, Tenet Healthcare has proposed to purchase the Slidell Memorial Hospital facility in consideration of One Hundred Thirty Million Dollars, payable in cash at closing. The hospital service district board of commissioners resolved, at a special meeting held October 16, 2002, to execute a non-binding Letter of Intent with Tenet Healthcare for transfer. by said or lease, of the hospital facility.
With respect to the proposed transaction, the District Attorney's office has been asked the following questions:
1. Can Slidell Memorial Hospital be sold to a for-profit entity?
2. Can Slidell Memorial Hospital be sold to Tenet Healthcare?
 3. Is the board of commissioners of St. Tammany Parish-Hospital Service District No. 2 the proper authority to negotiate and execute a sale of the hospital facility?
 4. Must the proposed sale be approved by the electorate of the service district by means of referendum?
 5. Does the hospital service district continue its existence after a sale of the hospital facility?
6. Do the sales proceeds belong to the hospital service district?
As legal counsel for the hospital service district, I have referred these questions to the Louisiana Attorney General and asked for a written opinion. The St. Tammany Parish District Attorney's Office has also prepared and submits herewith its opinion with respect to these issues.
1. Can Slidell Memorial Hospital be sold to a for-profit entity?
Act 180 of 1984, as amended, created and governs the hospital service district. Section 1(A) of Act 180 of 1984 recites:
 "A. There are hereby created two hospital service districts in St. Tammany Parish, hereafter to be termed the St. Tammany Parish Hospital Service District No. 1 and the St. Tammany Parish Hospital Service District No. 2, as the successors to the St. Tammany Parish Hospital Service District. St. Tammany Parish Hospital Service District No. 1 shall be comprised of all territory within Wards 1, 2, 3, 4, 5, and 10 of the parish and shall own and operate the St. Tammany Parish Hospital. St. Tammany Parish Hospital Service District No. 2 shall be comprised of all territory within Wards 6, 7, 8, and 9 of the parish and shall own and operate the Slidell Memorial Hospital."
Historically. St. Tammany Parish had but one hospital service district. The single board of commissioners governed two hospitals, namely St. Tammany Parish Hospital in Covington and Slidell Memorial Hospital in Slidell. As the parish population grew and hospital admissions increased, the legislative delegation introduced legislation to create two hospital service districts within St. Tammany Parish. Under the provisions of Act 180 of 1984, St. Tammany Parish Hospital Service District No. 1 was created to "own and operate" the St. Tammany Parish Hospital in Covington and St. Tammany Parish Hospital Service District No. 2 was created to "own and operate" the Slidell Memorial Hospital in Slidell. The geographical boundaries of the respective hospital service districts were also defined. No longer would a single board of commissioners be vested with authority to control both hospitals.
This historical context provides guidance for the legislative intent of Section 1 of Act 180 of 1984. The words "shall own and operate the St. Tammany Parish Hospital" and "shall own and operate the Slidell Memorial Hospital" define the roles of hospital service districts Nos. 1 and 2 respectively. Each hospital service district would he independent of the other. The words "shall own and operate" amplify that intention and do not restrict the authority of either hospital service district to alienate their respective hospital facilities.
Hospital service districts formed under the general enabling legislation (Louisiana Revised Statute 46:1051 et seq.) were created to own and operate hospitals. Louisiana Revised Statute 46:1052 provides:
 "The objects and purposes of the hospital service districts and the governing bodies created under the provisions of this chapter shall be:
 "(1) To own and operate hospitals for the care of persons suffering from illnesses or disabilities which require that patients receive hospital care."
Moreover, Louisiana Revised Statute 46:1064 (A) mandates that title to the hospitals vest in the public.
 "The hospital service districts as defined in R.S. 46:1072
are hereby declared to be political subdivisions of the state, and for the purpose of purchasing and acquiring lands and purchasing, acquiring, constructing and maintaining hospitals. nursing homes, physicians and dentists offices, laboratories, and other physical facilities necessary to carry out the purposes of this Chapter. Title to such land and physical facilities shall be in the public."
The words "shall own and operate" and "title to such land and physical facilities shall be in the public" have never been construed to mean that hospital service districts cannot alienate their facilities. Louisiana hospital service districts have, in fact, sold the hospital facilities which they owned and operated.
Similarly, the words "shall own and operate" found in Act 180 of 1984 do not forbid alienation of the hospital facility owned by St. Tammany Parish Hospital Service District No. 2.
Note that Attorney General Opinion No. 96-510 answered in the affirmative the question "Can a hospital owned by a duly established hospital service district be sold?" Attorney General Opinion No. 96-510 includes the following statement:
 "This office has consistently recognized that the hospital service district, not the police jury, owns and operates the facilities comprising the district. Accordingly, the hospital service district, represented by its board of commissioners, constituting the owner of the facility, would logically be the proper party vendor in any sales transaction. In accord are Attorney General Opinion Nos. 95-486. 93-479 and 91-27."
 2. Can Slidell Memorial hospital be sold to Tenet Healthcare?
 Our attention has been directed to Section 2(B)(9) of Act 180 of 1984, which reads:
 "No person owning or possessing any property interest in any of the stocks, bonds, or other securities issued by any private hospital located in the same area served by the St. Tammany Parish Hospital Service District No. 2, and no person who is a director or other officer, of any private hospital shall be eligible for or hold any district office, either as a member of the commission or as an officer of the medical staff Further, no person who is a director or an officer of, or who occupies any management position or office whatsoever, on the administrative staff of any such private hospital shall be eligible for or hold any district office or any management position or office. For the purposes of this Paragraph, the possession or ownership of such interest, stocks, bonds, or other securities by the spouse or minor children of any person shall be deemed to be the possession or interest of such person."
This provision prevents any director, officer or manager of "any private hospital located in the same area served by St. Tammany Parish Hospital Service District No. 2" from occupying any management position at Slidell Memorial Hospital. Because Tenet Healthcare owns and operates a private hospital within the city limits of Slidell, this provision could, arguably, preclude a lease or management agreement between Slidell Memorial Hospital and Tenet Healthcare.
But the meaning of this provision is rendered moot by a sale of Slidell Memorial Hospital to Tenet Healthcare. In the event of sale, St. Tammany Parish Hospital Service District No. 2 would not own and operate a hospital and would no longer sponsor a medical staff. Accordingly, the restriction of this provision will have no application to hospital operation subsequent to a sale of the hospital facility.
This provision will, however, prevent Tenet shareholders, directors, officers or managers from holding any position on the hospital service district board of commissioners or administrative staff of the surviving "foundation."
3. Is the Board of Commissioners of St. Tammany Parish Hospital ServiceDistrict No. 2 the proper authority to negotiate and execute a sale ofthe hospital facility?
Act 180 of 1984, Section 8 "Corporate status and powers of each district" recites. inter alia, that the hospital service district is a body corporate with all the powers of a corporation:
 "A. Each hospital service district created in this Act shall constitute a body corporate in law with all the powers of a corporation, shall have perpetual existence, shall have the power and right to incur debts and contract obligations, to sue and be sued, and to do and perform any and all acts in its corporate capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital service district was created."
The above language is similar to R.S. 46:1060 which reads in part:
 "Any hospital service district thus created and named by any police jury of any parish in the state shall constitute a body corporate in law with all the powers of a corporation, shall have perpetual existence, shall have the power and right to incur debts and contract obligations, to sue and be sued, and to do and perform any and all acts in its corporate capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital service district was created."
Commenting on R.S. 46:1052 and 46:1060, the author of Louisiana Attorney General Opinion 96-510 stated:
 "In light of this broad authority to execute contracts of every kind in order to carry out the objects and purposes of a district, we are of the opinion that surplus real estate and facilities may be sold if the sale is deemed beneficial to the district. A conclusion to the contrary would not only contradict the spirit of the laws relating to hospital service districts, but also place the district at a significant disadvantage within the health care industry, all in contravention of the statutory provisions contained in Section 1071, et seq. which promotes the district's ability to compete. This conclusion is consistent with the conclusions previously expressed in Attorney General Opinion Nos. 79-295, 78-24 and 74-1304."
Attorney General Opinion No. 96-510 noted that the board of commissioners is the proper party vendor in any sales transaction.
 "This office has consistently recognized that the hospital service district, not the police jury, owns and operates the facilities comprising the district. Accordingly, the hospital service district, represented by its board of commissioners, constituting the owner of the facility, would logically be the proper party vendor in any sales transaction. In accord are Attorney General Opinion Nos. 95-486, 93-479 and 91-27."
 4. Must the proposed sale be approved by the electorate of the servicedistrict by means of referendum?
With respect to the fourth question "Must the proposed sale be approved by the electorate of the hospital service district by means of referendum?", please note the content of Title 33 "Municipalities and Parishes," Chapter 10 "Public Utilities," Part III "Disposition of Utility Property and Granting of Franchises," Subpart A "Sale or Lease of Revenue Producing Utility":
 "Section 4341. Sale or lease of revenue-producing utility property; election required; exception.
 "A. Any municipality, the city of New Orleans excepted, or any parish or any other political subdivision or taxing district authorized to issue bonds under Article VI, Section 37, of the Constitution of Louisiana, all of which are hereinafter in this Subpart referred to as "municipality" or "parish", may sell or lease any revenue-producing properties owned by it., including all proper franchises to operate the properties for a term not to exceed sixty years. provided the governing authorities have been first authorized to do so by a vote of a majority of the qualified electors, voting at an election held for that purpose as herein directed . . ."
R.S. 33:4161 defines a "revenue producing utility" as follows:
 "For the purposes of this Part, "revenue producing public utility" means any revenue producing business or organization which regularly supplies the public with a commodity or service, including electricity, gas, water, ice, ferries, warehouses, docks, wharves, terminals, airports, transportation, telephone, telegraph, radio, television, drainage, sewerage, garbage disposal, and other like services; or any project or undertaking, including public lands and improvements thereon, owned and operated by a municipal corporation or parish or other political subdivision or taxing district authorized to issue bonds under authority of Section XIV of Article 14 of the Constitution of Louisiana of 1921, from the conduct and operation of which revenue can be derived."
Although hospital service districts are not included in the examples of "revenue producing utilities," the Louisiana Attorney General has opined that hospital service districts "fall within the broad sweep of this definition." La. Atty. Gen. Op. Nos. 94-443; 98-255.
Accordingly, we conclude that the sale of Slidell Memorial Hospital. must first be approved by a public referendum. The proposition must be scheduled and submitted to the electorate in accordance with the Louisiana Election Code.
5. Does the hospital service district continue its existence after asale of the hospital facility?
Act 180 of 1984, as amended, created and governs the hospital service district. The authority to own and operate hospitals is but one of its objects and purposes: Scetion 1(B) provides:
"B. Each district is created for the following purposes:
 "1. To own and operate health care facilities, including but not limited to hospitals, for the care of persons suffering from illness or disability."
 2. To administer other activities related to health care provision or promotion or to the promotion of the financial viability of the district.
 3. To promote and conduct scientific research and training related to health care.
 4. To participate, so far as circumstances may warrant, in any activity designated and conducted to promote the general health of' the community. In this regard, the district shall cooperate with the parish health department in the detection, prevention, and combating of any illness, mass immunization and screening tests, or public health education that contributes to the best interest of the public.
 5. To cooperate with the other public and private institutions and agencies engaged in providing health services to the public.
Because St. Tammany Parish Hospital Service District No. 2 was chartered with a broad healthcare purpose, its mission and community service will continue after the sale of the hospital facility. The hospital service district, governed by its board of commissioners, will survive the sale of its acute care hospital. Examples of continued service include allied health training. medical and nursing education, services to persons who are mentally ill, programs for persons who are mentally retarded or developmentally delayed, health screening, mass immunizations, scientific research, chemical dependency interventions and recovery, and cooperative endeavors with other public and private institutions. The health needs of a community are many and the service district will continue to address those needs after the sale of its hospital facility. Because of its future service to the community, the service district board of commissioners plans to retain ownership, possession and use of a three-story commercial building having an appraised value of $2,100,000. This building, located off-campus, is known as the "Wellness pavilion."
The specific mission statement of the hospital service district subsequent to the sale of its hospital facility is yet to be developed. The mission statement must, however, be consistent with the objects and purposes of Act 180 of 1984, as amended.
6. Do the sales proceeds belong to the hospital service district?
With respect to the sixth question "Do the sales proceeds belong to the hospital service district?", note that the hospital service district owns the hospital facility and accordingly owns all proceeds from any sale of the facility.
I refer again to Louisiana Attorney General Opinion 96-510:
 "It is the opinion of this office that the proceeds of the sale of a hospital owned by the hospital service district should revert to the hospital service district. As previously noted in our answer to your second question, the hospital service district's board of commissioners is clearly in charge of the district, the district's hospital and other assets, including the hospital building. It is the district, not the police jury, that owns and operates these facilities. See Attorney General Opinion Nos. 95-486, 93-479 and 91-27. Accordingly, the proceeds from a sale revert to the hospital service district."
As indicated by the above mission statement, the ownership and operation of a hospital facility is but one of the purposes for which the service district was created. The community served by the service district (Wards 6, 7, 8 and 9 of St. Tammany Parish) has many healthcare needs to be addressed by the service district and its corpus of sales proceed. The corpus and interest thereon must be governed and administered by the service district board of commissioners in accordance with the mission statements of Act 180 of 1984, as amended, and consistent with safeguards required by Louisiana Revised Statute 40:2115.11 et seq.
CONCLUSION:
Slidell Memorial Hospital can be sold to a for-profit entity, including Tenet Healthcare. The board of commissioners of St. Tammany Parish Hospital Service District No. 2 is the proper authority to sell the hospital facility. A public referendum is required for such sale, and transaction proceeds belong to the hospital service district to be administered by the service district board of commissioners in accordance with Act 180 of 1984, as amended, and consistent with safeguards required by Louisiana Revised Statute 40:2115.11 et seq.
Neither this opinion nor the request for opinion to the Louisiana Attorney General is intended to substitute for the review and approval procedure required by Louisiana Revised Statute 40:2115.11 et seq. "Review and Approval of Hospital Acquisitions."
Respectfully submitted,
 Walter P. Reed District Attorney
FAX TRANSMISSIONST. TAMMANY PARISH DISTRICT ATTORNEY'S OFFICE22nd Judicial District
WALTER P. REED 428 East Boston Street Covington, LA 70433 (985)898-2392 Fax: (985)898-2418
To: Jeanne Marie Barham Date: December 20, 2002Attn: Demetria
Fax #: (225)342-5991 Pages: 9, including cover sheet
From: Houston C. Gascon, III First Assistant District Attorney 22nd Judicial District
Subject: Attached please find opinion of District Attorney Walter Reed in regard to the transaction for the proposed sale of Slidell Memorial Hospital. This is being sent to you based upon conversations with Assistant District Attorney Donald Kearns. Please forward the opinion of the Attorney General as soon as possible. We have a deadline of Thursday December 26, 2002. Happy Holidays.
 Houston C. Gascon, III First Assistant District Attorney
 NOTE: If you do not receive all pages please contact Jennifer at (985)898-2403
ACT 180 OF 1984, AS AMENDED
Section 1. Creation; limits; purposes.
A. There are hereby created two hospital service districts in St. Tammany Parish, hereafter to be termed the St. Tammany Parish Hospital Service District No. 1 and the St. Tammany Parish Hospital Service District No. 2, as the successors to the St. Tammany Parish Hospital Service District. St. Tammany Parish Hospital Service District No. 1 shall be comprised of all territory within Wards 1, 2, 3, 4, 5, and 10 of the parish and shall own and operate the St. Tammany Parish Hospital. St. Tammany Parish Hospital Service District No. 2 shall be comprised of all territory within Wards 6, 7, 8, and 9 of the parish and shall own and operate the Slidell Memorial Hospital.
B. Each district is created for the following purposes:
 1. To own and operate health care facilities, including but not limited to hospitals, for the care of persons suffering from illness or disability.
 2. To administer other activities related to health care provision or promotion or to the promotion of the financial viability of the district.
 3. To promote and conduct scientific research and training related to health care.
 4. To participate, so far as circumstances may warrant, in any activity designated and conducted to promote the general health of the community. In this regard, the district shall cooperate with the parish health department in the detection, prevention, and combating of any illness, mass immunization and screening tests, or public health education that contributes to the best interest of the public.
 5. To cooperate with the other public and private institutions and agencies engaged in providing health services to the public.
Section 2. Board of commissioners; appointment; terms; vacancies; officers;meetings; compensation.
A. The structure and governance of the St. Tammany Parish Hospital Service District No. 1 shall be as follows:
 1. The district shall be governed by a board of eight commissioners appointed to serve as follows: Amended by Act 353 of 1986; further amended by Act 570 of 1992.
 a. Six members appointed by the parish governing authority, one to represent each ward included in the district, who shall serve terms of six years and shall have been residents and electors of the ward from which they are appointed for one year prior to appointment. Amended by Act 570 of 1992.
 b. One member of the St. Tammany Parish Hospital medical staff elected by the medical staff as its representative on the commission to serve a term of one year. Amended by Act 570 of 1992.
 c. The president of the St. Tammany Parish Police Jury or his designee, who shall also be a member of such police jury, or the parish manager, who shall be a non-voting member but shall be counted for quorum purposes. Added by Act 570 of 1992.
 2. Members of the commission are eligible for reappointment by the respective appointing authority. Any vacancy on the commission shall be filled in the same manner as the original appointment. Amended by Act 353 of 1986.
 3.a. Members of the St. Tammany Parish Hospital Service District board of commissioners in office on August 1, 1984, representing Wards 1, 2, 3, 4, 5, and 10 shall serve as members of the commission for terms as follows:
 i. The member representing Ward 1 shall serve until August 21, 1987.
 ii. The member representing Ward 2 shall serve until June 16, 1990.
 iii. The member representing Ward 3 shall serve until May 15, 1988.
 iv. The member representing Ward 4 shall serve until September 16, 1989.
 v. The member representing Ward 5 shall serve until August 19, 1985.
 vi. The member representing Ward 10 shall serve until June 16, 1990.
 b. Thereafter their successors shall be appointed to serve as provided by Subparagraph (a) of Paragraph 1 herein.
 4. At the beginning of each hospital fiscal year the commission shall elect from its membership a chairman, vice chairman, and other such officers as deemed necessary, and the chairman shall appoint a secretary-treasurer all to serve terms of one year.
 5. The domicile of the commission shall be the St. Tammany Parish Hospital in Covington, Louisiana.
 6. The commission shall hold regular monthly meetings and may hold special meetings or change the regular monthly meeting date upon the call of the chairman, or, in his absence, the vice chairman or a majority of the commission members voting by mail ballot. Emergency meetings may be called upon whatever notice is possible and convenient by the chairman, or in his absence, by the vice chairman, or in both their absences, by any three members.
 7. Each member of the commission shall receive per diem not to exceed seventy-five dollars per day for meetings he attends, however, except in the case of an emergency no member shall receive per diem for more than three meetings per month. Except as otherwise authorized by the commission, members shall receive no additional compensation for any other services rendered as commissioners. Amended by Act 353 of 1986; further amended by Act 999 of 1991.
 8. Members or officers of the medical staff, employees or officers of the district or of a health care facility of the district, commission members, and persons who occupy management positions or any other office whatsoever for the district or one of its facilities may possess a property interest in or own stocks, bonds, or other securities issued by health maintenance organizations and preferred provider organizations and may refer members of these organizations to the health care facilities of the district.
B. The structure and governance of the St. Tammany Parish Hospital Service District No. 2 shall be as follows:
 1.a. The district shall be governed by a board of ten commissioners appointed as follows: Amended by Act 570 of 1992.
 i. Six members appointed by the parish governing authority, one to represent each ward included in the district, except there shall be two members each appointed from Wards 8 and 9, who shall have been residents and electors of the ward from which they are appointed for one year prior thereto and who shall serve terms of six years. Amended by Act 570 of 1992.
 ii. One member appointed by the parish governing authority from the district at large who shall be a resident and elector of the district and shall serve a term of six years.
 iii. One member representing the city of Slidell, appointed by a majority vote of the parish governing authority from a nomination submitted by the governing authority of the city of Slidell, who shall be a resident and elector of that city and shall serve a term of six years.
 iv. One member of the Slidell Memorial Hospital medical staff who shall be an active member of said staff and who shall be appointed by the remainder of the commission from nominations submitted by a committee selected by the commission chairman; however, the commission chairman shall have no vote in appointing such member. The initial medical staff member so appointed shall serve a term of one year; thereafter, his successors shall serve terms of two years.
 v. The president of the St. Tammany Parish Police Jury or his designee, who shall also be a member of such police jury, or the parish manager, who shall be a non-voting member but shall be counted for quorum purposes. Added by Act 570 of 1992.
 b. Except with respect to appointment of the at large member, the parish governing authority shall obtain consultation and advice from the chairman of the commission and the Slidell Memorial Hospital administrator prior to making any appointments to the commission.
 2. Members of the commission are eligible for reappointment by the respective appointing authority. Any vacancy on the commission shall be filled in the same manner as the original appointment.
 3. Any appointing authority may revoke the appointment of a member for explicitly stated cause upon a majority vote of a quorum of its membership.
 4.a. Members of the St. Tammany Parish Hospital Service District board of commissioners in office on August 1, 1984, representing Wards 6, 7, 8, and 9 shall serve as members of the commission for terms as follows:
 i. The member representing Ward 6 shall serve until August 1, 1987.
 ii. The member representing Ward 7 shall serve until August 1, 1990.
 iii. The member representing Ward 8 shall serve until August 1, 1989.
 iv. The member representing Ward 9 shall serve until August 1, 1987.
 b. The at large member of the St. Tammany Parish Hospital Service District in office on August 1, 1984, shall serve as the at large member of the commission until August 1, 1990.
 c. Thereafter, their successors shall be appointed to serve as provided by Subparagraphs (a) and (b) of Paragraph (1) herein. All successor appointments shall be made within sixty days following the expiration of any term.
 5. The at large member of the commission shall serve as commission chairman; however, the chairman of the St. Tammany Hospital Service District board of commissioners in office on August 1, 1984, shall serve as commission chairman for Hospital Service District No. 2 until the expiration of the term as commissioners to which he was appointed. At the beginning of each hospital fiscal year the commission shall elect a vice chairman and other such officers deemed necessary, all to serve terms of one year.
 6. The domicile of the commission shall be the Slidell Memorial Hospital in Slidell, Louisiana.
 7. The commission shall hold its first meeting not later than September 10, 1984, and thereafter shall hold regular meetings at least every other month and as often as it deems necessary. Special meetings may be called upon five days notice by the chairman, or in his absence, by the vice chairman, or in both their absences, by a majority of the commission members voting by mail ballot. Emergency meetings may be called upon whatever notice is possible and convenient by the chairman, or in his absence, by the vice chairman, or in both their absences, by any three members.
 8. Each member shall receive per diem not to exceed seventy-five dollars for each meeting he attends. However, except in the case of an emergency no member shall receive per diem for more than three meetings per month. Except as otherwise authorized by the commission, members shall receive no additional compensation for any other services rendered as commissioners. However, in no event shall a board member, hospital administrator, or physician receive compensation or be reimbursed for expenses incurred for attending a retreat. Amended by Act 440 of 1997.
 9. No person owning or possessing any property interest in any of the stocks, bonds, or other securities issued by any private hospital located in the same area served by the St. Tammany Parish Hospital Service District No. 2, and no person who is a director or other officer, of any private hospital shall be eligible for or hold any district office, either as a member of the commission or as an officer of the medical staff. Further, no person who is a director or an officer of, or who occupies any management position or office whatsoever, on the administrative staff of any such private hospital shall be eligible for or hold any district office or any management position or office. For the purposes of this Paragraph, the possession or ownership of such interest, stocks, bonds, or other securities by the spouse or minor children of any person shall be deemed to be the possession or interest of such person.
 10. Members or officers of the medical staff, employees or officers of the health care facilities of the district, commission members, and persons who occupy management positions or any other office whatsoever for a facility of the district or for the district may possess a property interest in or own stocks, bonds, or other securities issued by health maintenance organizations and preferred provider organizations and may refer members of these organizations to the health care facilities of the district.
Section 3. Powers, duties, and responsibilities of each board ofcommissioners.
In addition to any powers, duties, and responsibilities defined elsewhere in this Act, each commission shall have the following powers, duties, and responsibilities for its respective district: Amended by Act570 of 1992.
 1. To represent the public interest in providing medical care in the parish.
 2. To advise the parish governing authority and the directors of health care facilities under its control of problems concerning the operation of district facilities.
 3. To make, amend, and repeal and to promulgate and enforce rules, regulations, resolutions, guidelines, and organizational modifications concerning the conduct of health care facilities in order to ensure proper and reliable operation of such facilities.
 4. To conduct hearings and rule upon complaints by or against any officer or employee of the district.
 5. To review and modify or set aside any action of the officers or employees of the district which the commission may determine to be desirable or necessary in the public interest.
 6. To appoint a chief executive officer of the hospital who shall be given full responsibility and authority to manage the hospital in accordance with the policies established by the commission.
 7. To contract for the construction of facilities, the provision of services, or in any other manner which will assist the commission in providing quality health care for the district.
 (8) To appoint any standing and special committees as may be necessary to carry out the purposes of this Act.
 9.a. With respect to St. Tammany Parish Hospital Service District No. 1, to enter into an employment contract with the chief executive officer, if desired. Amended by Act 570 of 1992.
 b. With respect to St. Tammany Parish Hospital Service District No. 2, to enter into an employment contract with a chief executive officer and a chief financial officer who shall report directly to the board of commissioners. Amended by Act 570 of 1992.
 10. To approve the medical staff and its bylaws — to suspend these bylaws at any time and for any length of time, and to require rewriting of all or part of such bylaws.
 11. To accept any or all officers elected by the medical staff, or to refuse to accept any or all such officers, and to require the election of new officers.
 12. To purchase and acquire lands and to purchase, acquire, construct, and maintain health care facilities, including hospitals, clinics, nursing homes, offices for health care professionals, laboratories, and any other physical facilities necessary to carry out the purposes of this Act.
 However, the board of St. Tammany Parish Hospital Service District No. 1 and No. 2 shall not relocate the primary health care facilities from the municipal corporate limits of the city presently the domicile of the respective board of commissioners without the consent of the governing authority of St. Tammany Parish. Amended by Act 999 of 1991.
 13. Except for St. Tammany Parish Hospital Service District No. 2, to change the name of the hospitals owned and operated by the district. Amended by Act 570
of 1992.
 14. a. With respect to St. Tammany Parish Hospital Service District No. 1, to employ legal counsel at a rate of compensation as it may determine to advise in all matters pertaining to the business of the district and to perform such other functions with respect to the legal affairs of the district as the commission may direct. Amended by Act 570 of 1992.
 b. With respect to St. Tammany Parish Hospital Service District No. 2, to contract with the district attorney, pursuant to R.S. 16:2 (A), to act as legal counsel for the district to advise in all legal matters pertaining to the business of the district and to perform such other functions with respect to the legal affairs of the district as the commission may direct. Outside counsel may be employed to represent the district at such rate of compensation as mutually agreed to by the commission and the district attorney. The commission and the district attorney shall mutually agree to the contracting of outside legal representation. Amended by Act 570 of 1992.
 15. To establish, maintain, and carry on its activities through one or more profit or nonprofit corporations for the benefit of the district.
 16. To borrow money and to issue general obligation bonds, revenue bonds, notes, certificates, or other evidences of indebtedness of the district in order to accomplish any of its objects and purposes.
17. To delegate authority to its officers, appointees, and employees.
 18. To do any and all things except as limited by the Louisiana Constitution which are necessary for and to the advantage of health care facilities, including but not limited to the extension of privileges and use of health care facilities to persons residing outside the district.
 19. In addition to other benefits, salary, and compensation, to offer assistance through the district to members of the medical staff in order to attract and retain competent staff, including but not limited to the following:
a. The establishment of clinic or group practice;
 b. Malpractice insurance coverage under the health care facility's policy of professional liability insurance;
c. Professional fee billing; and
 d. The opportunity to rent office space in facilities owned or operated by the district.
 20. The commission may permit by a general or specific grant of authority a health care facility to expend or contract to expend money, or incur liability, or enter into a contract or contracts which by the terms involves the expenditure of money for purposes not provided for in the budget or which are in excess of the amounts appropriated in the resolution of the commission approving the budget for the fiscal year.
 The commission may itself expend, or contract to expend money, or incur liability, or enter into a contract or contract which, by the terms, involves the expenditure of money for purposes not provided for in the budget or which are in excess of the amounts appropriated in the resolution of the commission approving the budget for the fiscal year.
Section 4. Bylaws; compliance with Act.
Within one hundred twenty days after the effective date of this Act, the bylaws of each commission and the bylaws of its respective medical staff shall be made compatible in all respects with the provisions of this Act. Any discrepancy between the bylaws of the medical staff and this Act, or between the bylaws of the commission and this Act, shall be resolved in favor of this Act. In no case shall the bylaws of the medical staff prevail against either this Act or the bylaws of the commission.
Section 5. Commission officers; powers, duties, and responsibilities.
The duties and responsibilities of the officers of each commission shall be as follows:
A. The chairman shall preside over all meetings, decide all questions of procedure, and have all authority generally granted to chairmen and other presiding officers. Except as otherwise provided in this Act, he may vote on any issue before the commission, and he shall vote to break a tie in any vote taken by the commission. Except to break a tie, he shall have no vote in the selection of the vice chairman. The chairman shall appoint all standing committees and their officers not later than September 30, 1984 and annually thereafter, and he shall appoint all other committees and their officers whether or not such committees consist of commission members. The chairman shall have the right and power to interest himself in all affairs of the district and the facilities operated by the district.
B. The vice chairman shall act as chairman in the absence of the chairman.
C. The secretary-treasurer shall issue notices of all regular and special meetings, receive and attend to all correspondence of the commission, have custody of all documents of the commission, and otherwise perform such acts as usually pertain to his office.
 Section 6. Chief executive officer; appointment; powers, duties, andresponsibilities.
A. Each board of commissioners shall appoint and employ a chief executive office, hereafter referred to as "CEO", who has training and experience in the field of hospital administration and who is familiar with the principles and methods of hospital and institutional care. He shall be a full-time employee of the district and shall receive compensation as fixed by the commission. The commission may contract with the CEO, or he may serve at its pleasure.
B. In addition to the powers, duties, and responsibilities conferred by any other provisions of this Act, the CEO shall have the following powers, duties, and responsibilities.
1. To attend all meetings of the commission.
 2. To establish positions of employment and to appoint and employ personnel necessary for the operation of the health care facility or facilities under his jurisdiction to establish rates of pay; to abolish positions; and to transfer, promote, demote, and otherwise alter the status of employees of the facility or facilities.
 3. Within the rules, regulations, guidelines, directives, policies, and procedures set forth by the commission, to control and direct all business affairs of the health care facility, including but not limited to the following:
a. Maintaining the accounts of the district;
b. Making necessary purchases of equipment, supplies, and materials;
c. Making major and minor repairs to physical facilities; and
d. Negotiating and signing contracts.
 4. Within the rules, regulations, guidelines, directives, policies, and procedures set forth by the commission, to set and amend rates for all health care services as deemed necessary for the proper fiscal operation of the health care facility.
 5. To prepare and publish such reports regarding the work of the health care facility as may be required by law or at the direction of the commission.
 6. To ensure that the goals, directives, and policies relating to the conduct of the affairs of the health care facility, as established by the commission or by state or federal laws, are carried out.
 7. To cooperate with the medical staff in the execution of the bylaws and policies which such staff may establish.
8. To prepare an annual budget for approval by the commission.
 9. To provide for documentation and maintenance of appropriate medical records and reports.
 10. To receive, record, and maintain a correct accounting of all gifts, bequests, grants in aid, and other revenues for purposes designated, all subject to any conditions that may be imposed in any act of donation or any law providing grants in aid or other revenues for such purposes.
 11. To perform any other duties and functions which he or the commission considers necessary or desirable to carry out the purposes of this Act.
 12. To serve as ex officio adviser to all committees of the commission unless specifically excluded from this role by the commission or its chairman.
Section 7. Medical staff; appointment; duties, and responsibilities.
A. Each commission shall appoint a medical staff to the health care facilities owned or operated by the district. Such appointment may be made after consultation with the physicians who are authorized to practice within the health care facility or facilities.
B. The medical staff so appointed shall have the following duties:
1. To provide professional care to the sick and injured.
 2. To advise and assist the commission and the CEO relative to standards of health care operation and professional problems.
3. To participate in the educational activities of the district.
 4. To propose rules and regulations for the conduct of the medical staff for commission approval.
 5. With respect to the medical staff of St. Tammany Parish Hospital Service District No. 1, to elect from its membership a chief of staff, a vice chief of staff, and a secretary-treasurer. If the medical staff of the health care facility is departmentalized, the staff shall also select from its membership the heads of any specialized services of the health care facility. Subsequent to the election, the elected heads of specialized services shall be approved by a committee consisting of the chairman of the commission, who shall serve as chairman of the committee, the CEO, and the newly elected chief of staff. If an elected head of a specialized service is not approved by the committee, the committee shall nominate at least two qualified staff members for the position of head of the specialized service, and the staff shall elect one from those nominated. Amended by Act 233 of 1987.
 6. With respect to the medical staff of St. Tammany Parish Hospital Service District No. 2, to elect from its membership officers to the medical staff. If the medical staff of the health care facility is departmentalized, the medical staff or its designee shall appoint from its membership the heads of any specialized services of the health care facility unless the health care facility appoints such heads of specialized services. The officers elected and the department heads appointed by the medical staff or its designee shall be subject to commission approval. Amended by Act 233 of 1987.
 7. To consult with the commission in the appointment of a CEO. Amended by Act 233 of 1987.
Section 8. Corporate status and powers of each district; evidence of actsand proceedings.
A. Each hospital service district created in this Act shall constitute a body corporate in law with all the powers of a corporation, shall have perpetual existence, shall have the power and right to incur debts and contract obligations, to sue and be sued, and to do and perform any and all acts in its corporate capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital service district was created. Such hospital service district shall have the right and power of expropriating property for the purpose of acquiring land for any purpose that it may find necessary in the operation of a hospital service district and may acquire by donation or purchase, any existing hospital facility in the district. It shall also have the power and authority to acquire any and all necessary equipment and buildings for the purpose of performing the objects for which it is formed, and shall own all sites and physical facilities, which are acquired either by donation, purchase, expropriation, exchange, or otherwise, in full ownership. The provisions of this Subsection shall be subject to the limitations of Paragraph (12) of Section 8 of this Act. Amended by Act 999 of 1991.
B. Each district shall cause to be conducted annually, by a duly qualified certified public accountant, an audit and examination of its books and accounts, said audit to be filed with the legislative auditor within six months after the close of the period audited. The legislative auditor shall have the authority to prescribe the terms and conditions of any such audit conducted by a certified public accountant and to require the district to present said terms and conditions to him for approval prior to the commencement of said audit. The legislative auditor shall have access to the working papers of the accountant during the examination and subsequent to its termination. The legislative auditor is authorized to conduct an independent audit and examination of the books and accounts of the district pursuant to R.S. 24:513.
C. Each hospital service district may establish by resolution any health care facility as a profit or nonprofit corporation as defined by law. Each district shall have a corporate seal, and copies of all the regulations and copies of proceedings of the commission certified by its secretary-treasurer, under its corporate seal, shall be received in all courts as prima facie evidence of the acts and proceedings of the commission.
Section 9. District tax collection and allocation of proceeds thereof.
For the purposes of providing revenue to carry out the objects contemplated hereby, each commission may levy and collect annually a special tax not to exceed five mills on all property in the district subject to such tax in accordance with Article VI, Section 32 of the Louisiana Constitution, subject to approval by a majority of the electors of the district voting at an election called by the commission and held for that purpose. The tax shall be collected in the same manner as other special taxes. The avails of any such tax shall be used solely for acquisition, construction, improvement, maintenance, and operation of health care facilities or improvements.
Section 10. Authority to issue bonds; continuation of prior obligations.
A. Each commission shall have the power to issue bonds for the purpose of constructing, acquiring, extending, and improving health care facilities of the district pursuant to Article VI, Section 33 of the Louisiana Constitution and other constitutional and statutory authority supplemental thereto. Such bonds may be issued only after authorization by a majority of voters in the district voting at an election called by the commission and held for that purpose.
B. Bonds or other obligations secured by both the Slidell Memorial Hospital and the St. Tammany Parish Hospital or by the St. Tammany Parish Hospital Service District on the effective date of this Act shall continue to be secured by both hospitals and by St. Tammany Parish Hospital Service District No. 1 and St. Tammany Parish Hospital Service District No. 2 until they are retired.
Section 11. Contracts; cooperation.
The Slidell Memorial Hospital and the St. Tammany Parish Hospital may contract to receive or offer agreements for materials, services, or supplies pursuant to a shared service or group purchasing arrangement with other hospitals, either public or private, in accordance with the provisions of R.S. 38:2211 et seq. In addition, St. Tammany Parish Hospital and Slidell Memorial Hospital, and St. Tammany Parish Hospital Service District No. 1 and St. Tammany Parish Hospital Service District No. 2, shall otherwise cooperate in all respects possible for the best interests of the citizens of St. Tammany Parish.
Section 12. Liberal construction.
This Act, being intended to carry out a function of the state to protect the health and welfare of the inhabitants of the state to be affected thereby, shall be liberally construed by the courts to effect its purposes.
Section 13. Repealer.
All laws or parts of law in conflict or inconsistent herewith, and in particular the provisions of Act No. 129 of 1950 and Act No. 116 of 1958, are hereby repealed.
Section 14. Effective date.
This Act shall become effective on August 1, 1984.